PEERENBOON and wife, Respondents, vs. WISCONSIN
    TRACTION, LIGHT, HEAT & POWER COMPANY, Appel-
    lant.

*June 9—October 10, 1922.*

*Waters: Obstruction of natural watercourses: Railroads: Insuffi-
cient culverts.*

In an action to recover damages caused by the flooding of
    plaintiffs' lands, the evidence is *held* sufficient to show that
    there was an insufficient opening through the defendant's
    railway embankment where it crossed a natural waterway
    and that such faulty construction caused the flooding com-
    plained of.

APPEAL from a judgment of the municipal court of Outa-
gamie county: ALBERT M. SPENCER, Judge. *Affirmed.*

The plaintiffs sought to recover damages for the flooding
of their lands, claiming the same to have resulted from an
insufficient trestle maintained by defendant on its right of
way and over a natural watercourse which passed through
plaintiffs' land.    Two such floods were relied upon; one
May 15, 1918, the other March 15, 1920.

For some distance west of the plaintiffs' lands the defend-
ant's right of way was parallel and close to the right of way
of the Chicago & Northwestern Railway.    They then di-
verged, the defendant's continuing almost due east, that
of the Chicago & Northwestern Railway to the northeast.
Just after so diverging defendant's road is crossed by a
public highway from the west and running a little to the
northeast after crossing.    Plaintiffs' lands extend to the
Chicago & Northwestern Railway on the north, to defend-
ant's road on the south, and are crossed by said public
highway at their southwest corner.

A natural watercourse comes from some distance to the
north, passes through a culvert under the Chicago & North-
western Railway through plaintiffs' lands and a culvert on
the public highway, and then on through plaintiffs' lands for

about 250 feet to a trestle in defendant's right of way, and then on some 300 feet to the Fox river. At times the water-course is dry north of the railroad culvert, but it spreads out into lagoons on plaintiffs' lands.

Plaintiffs had occupied and farmed the lands for over seventeen years. When they first came there had been an opening under defendant's track and across the right of way from thirty-two to thirty-seven feet wide. In 1912 certain piles that had been driven in the waterway were taken out and four steel caissons, eighteen feet apart and filled with concrete, were placed there, across which the track was carried on two I-beams and stringers and earth filled in behind these caissons.

There was testimony that prior to 1912 there had been no flooding of plaintiffs' premises, but that subsequent to such period there had been two floodings other than those for which this suit was brought.

At the time of the flood in 1920 considerable ice had formed and still remained on the surface of the water between the Northwestern railroad track down to the Fox river, and some of such ice was of such a depth that it rested on the ground surface. Owing to the rapid melting of the snow on March 15, 1920, there was a sudden rise of water in the watercourse in question. Some of the ice remained stationary both above and below the defendant's trestle and under the highway culvert and remained so until after the flood subsided. There was a sudden lifting of a large amount of ice at about 5 o'clock in the afternoon when the flood was at its extreme height and at about the time the plaintiffs' premises were flooded to the greatest extent. Large pieces of ice floated down stream before and after that time. Defendant blasted and removed ice from 5 o'clock p. m. that day on both sides of its trestle, and particularly outside of its right of way and towards the Fox river, to permit of the full flow of the stream to the river.

The jury by a general verdict found for the plaintiffs

and assessed damages at $550. Thereupon, after respective motions by the parties, judgment was entered for plaintiffs for said sum with costs. From such judgment defendant has appealed.

For the appellant there was a brief by *Lawrence A. Olwell* of Milwaukee and *Francis W. Grogan* of Appleton, attorneys, and *Olwell, Durant & Brady* of Milwaukee, of counsel, and oral argument by *Lawrence A. Olwell.*

For the respondents there was a brief by *Ryan & Cary* of Appleton, and oral argument by *Thomas H. Ryan.*

The following opinion was filed July 8, 1922:

ESCHWEILER, J. Defendant's principal contention on this appeal is that the physical facts shown conclusively demonstrate and to a mathematical certainty that the floods in question could not be traceable to any negligence on defendant's part in constructing the trestle through which the waters coming down this particular watercourse passed through its right of way.

Great reliance is placed upon what is claimed to be the undisputed mathematical facts, as stated by defendant's engineer, that the water-carrying capacity of the opening under the highway culvert is but 93 square feet, that of defendant's trestle 193 square feet, and that therefore all and more than again as much water that could and must pass through the highway culvert could and must pass through defendant's trestle, and that the flooding of plaintiffs' land could not, therefore, be chargeable to any neglect by defendant in its duty to provide sufficient flowage capacity through its right of way. Defendant contends that such a physical situation renders nugatory oral testimony tending to support a contrary conclusion, under the rule established in such cases as *Samulski v. Menasha P. Co.* 147 Wis. 285, 291, 133 N. W. 142.

The difficulty here, however, is that defendant's premises, based upon so certain a science as mathematics, are

nevertheless mistaken. The drawings offered in evidence by defendant as to these two openings, and supported by the testimony of its engineer, disclose a rectangular space in defendant's trestle of eighteen feet in width by ten feet six inches in height. Multiplying the width by the height gives 189 square feet of surface front as compared with the 193 square feet as stated in the evidence.

The opening under the highway is twenty feet wide at the bed of the stream. It is rectangular for a height of from five to seven feet above the bed of the stream. Assuming it to be but five feet high, this rectangular space alone presents 100 square feet of front surface. In addition there is above that an arch rising to a height in the center of ten feet seven inches, and computing the area of this arch space, assuming that it starts but five feet above the stream bed, it presents about 79 square feet of front surface, making 179 square feet instead of 93 square feet for the highway culvert. The difference, therefore, is no more than ten square feet instead of the 100 square feet assumed on this appeal to actually exist.

Other physical facts disclosed by the record, namely, the draining and the meltings from the snow which would flow into the watercourse at points between the highway and defendant's trestle and therefore not through the highway culvert, together with the large amount of floating ice in the watercourse between these two points, present a situation from which a jury might rightfully draw the conclusion that there was fault in the construction of defendant's trestle, thereby causing the flooding on both of the occasions for which damages are sought. The jury in arriving at such conclusion might well have taken into consideration the uncontradicted fact that no such flooding had occurred prior to the lessening of the space in defendant's trestle by the work done in 1912. There is evidence both ways as to whether the waters crossed the highway from the north, indicating a damming of the flow at the high-

way, or from the south, indicating that the flow was checked at the trestle. In the light of all the circumstances we cannot upset the conclusion reached by the jury and trial court.

It is also urged that the amount assessed for damages is unwarranted under the testimony. We have examined the record in that regard and cannot interfere.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on October 10, 1922.